# EXHIBIT J

FILED

MAY 14 2015

MISS. PUBLIC SERVICE
COMMISSION

'13-UA- 189

**CYNTHIA F. SHAW**

**RESPONSE TO SURREBUTTAL TESTIMONY**

**On Behalf of**

**MISSISSIPPI POWER COMPANY**

**BEFORE THE MISSISSIPPI PUBLIC SERVICE COMMISSION**

**DOCKET NO. 2013-UA-0189**

**Q.    Would you please state your name, position and business address?**

A.    My name is Cynthia F. Shaw.  I am the Comptroller of Mississippi Power Company (MPC or the Company).  My business address is 2992 West Beach Boulevard, Gulfport, Mississippi 39501.

**Q.    Have you previously testified before the Mississippi Public Service Commission (MPSC or the Commission)?**

A.    Yes, I have.

**Q.    What is the purpose of your testimony?**

A.    The purpose of my testimony is to respond to certain topics addressed and issues raised by Larkin & Associates, PLLC, (Larkin) regarding the Kemper Integrated Gasification Combined Cycle (IGCC) Project (Kemper Project or Project).  The topics I will address are:

      1.  Internal Audit of actual Kemper Project costs for the prudency review period April 1, 2013, through December 31, 2014

      2.  Compensation

      3.  Pre-Construction Costs

**MPSC Electronic Copy ** 2013-UA-189 Filed on 05/14/2015 **

4.  Aircraft Costs

5.  AFUDC on Unrecorded Liabilities

6.  Accounting for Land acquired for Liberty Mine

Issues raised by Larkin that relate to the mine land procurement plan were addressed in my Rebuttal Testimony filed May 23, 2014,[1] and issues related to cost cap exceptions were addressed by Mr. John Huggins and Mr. Steven Owen in their combined Rebuttal Testimony filed on May 23, 2014.[2]

## 1.  Internal Audit of actual Kemper Project costs for the Prudency Review Period of April 1, 2013, through December 31, 2014

Q.  **Larkin has proposed that MPC should be ordered to conduct an internal audit of actual Kemper Project costs for the period April 1, 2013, through December 31, 2014. Do you agree with this proposal?**

A.  No, I do not.  During the Phase One Prudence review period, Kemper costs were audited by both internal and external sources from various perspectives based on differing audit objectives.

Externally, audit processes were put in place to provide for an audit of Kemper transactions by the independent accounting monitors, Nicholson & Company, PLLC, (Nicholson) and Larkin, hired by the Mississippi Public Service Commission and Mississippi Public Utilities Staff (MPUS or Staff), respectively.  Nicholson and Larkin have reviewed the amounts reported in the Kemper Project Monthly Status Report filed

---

[1] MPSC Docket No. 2013-UA-0189, Rebuttal Testimony of Cynthia F. Shaw, filed May 23, 2014, pp. 33 - 34.
[2] MPSC Docket No. 2013-UA-0189, Rebuttal Testimony of John C. Huggins and Steven K. Owen, filed May 23, 2014, pp. 100 – 15.

---

**MPSC Electronic Copy ** 2013-UA-189 Filed on 05/14/2015 ***

by the Company with the Commission. These Independent Monitors (IMs) have conducted detailed and extensive reviews of the Kemper Project costs. Nicholson has assigned staff to work exclusively at the MPC corporate office for purposes of its review.

Kemper Project costs have also been subject to auditing procedures performed by Deloitte & Touche, LLP, (Deloitte) in connection with their annual audits of MPC's financial statements. Their audit is based on procedures that meet the standards of the Public Company Accounting Oversight Board. Deloitte has issued unqualified opinions on the Company's financial statements since the inception of the Kemper Project and prior.

Internally, MPC and SCS management personnel perform extensive review and oversight of the Kemper Project costs in accordance with internal controls, and Southern Company Internal Audit also has reviewed various aspects of the Kemper Project costs. Internal Audit, after consultation with the Southern Company Audit Committee of the Board of Directors, MPC Board of Directors, Southern Company management, and MPC management, considered identified risks in its determination of the areas that should be audited. As shown in documents previously filed in this proceeding, all reportable Internal Audit findings have been addressed.

Most of these processes have continued to operate after the end of the March 31, 2013, Phase One Prudence review period. MPC continues to file the Kemper Project Monthly Status Report with the Commission, and it is our understanding that the IMs would continue to monitor the Kemper costs. Nicholson provides the Company with monthly lists of transactions for review. Supporting information for these transactions continues to be provided.

---

Response To Surrebuttal Testimony of Cynthia F. Shaw
On Behalf of Mississippi Power Company
Page 3 of 11

**MPSC Electronic Copy ** 2013-UA-189 Filed on 05/14/2015 ***

Kemper Project costs continue to be subject to auditing procedures performed by Deloitte in connection with their annual audits of MPC's financial statements. Internal Audit continues to audit those areas identified as risks by the Southern Company Audit Committee of the Board of Directors, MPC Board of Directors, Southern Company management, and MPC management. MPC and SCS management personnel continue to perform extensive review and oversight of the Kemper Project costs in accordance with internal controls.

These processes continue to be adequate for the review of the Kemper costs. Therefore, especially in light of the extensive review performed by internal and external auditors and IMs, the requested audit is unnecessary.

## 2. Compensation

Q. **What was Larkin's recommendation regarding Compensation in their July 21, 2014, Surrebuttal?**

A. On page 18 of its Surrebuttal, Larkin states:

> **Q. Have you revised your recommendation on incentive and stock-based compensation since your Direct Testimony and report were filed on March 19, 2014?**
>
> A. Yes. As noted above, we are now recommending that all incentive and stock-based compensation charged to the Kemper IGCC Project through this review period of April 1, 2009, through March 31, 2013, be deferred in a regulatory asset, the recoverability of which should be determined in the next prudence hearing following completion of the Kemper Project.

---

Response To Surrebuttal Testimony of Cynthia F. Shaw
On Behalf of Mississippi Power Company
Page 4 of 11

**\*\*MPSC Electronic Copy \*\* 2013-UA-189 Filed on 05/14/2015 \*\***

Q.    Are you in agreement with this recommendation?

A.    No.  Larkin's recommendation is contrary to generally accepted accounting principles (GAAP) and Federal Energy Regulatory Commission (FERC) accounting requirements. At-risk and stock-based compensation costs are currently appropriately included in the Kemper Project's Construction Work in Progress (CWIP).  It would be contrary to these standards to reclassify these amounts from CWIP to a regulatory asset as FERC's description of Account 107 Construction work in progress – Electric states[3],

> A. This account shall include the total of the balances of work orders for electric plant in process of construction.

> FERC Electric Plan Instructions, 3. Components of Construction cost,[4] states,

> (2) *Labor* includes the pay and expenses of employees of the utility engaged on construction work, and related workmen's compensation insurance, payroll taxes and similar items of expense.

Therefore, these amounts should remain in CWIP until such time as the Project is completed and the assets are placed in service, at which time the costs will be transferred to Plant in Service.  In the event that the Commission does not make a decision on this issue prior to the placement of these assets into service, the Company could defer the depreciation of these costs, if so directed by the Commission, until a final decision regarding cost recovery is made.

MPC maintains a compensation program that is competitive and is in line with market and industry practice in order to attract and retain highly trained and dedicated

---

[3] Code of Federal Regulations, Conservation of Power and Water Resources, 18 CFR Ch. 1, Pt. 101 Uniform System of Accounts Prescribed for Public Utilities and Licensees Subject to the Provisions of the Federal Power Act.
[4] *Ibid.*

---

Response To Surrebuttal Testimony of Cynthia F. Shaw
On Behalf of Mississippi Power Company
Page 5 of 11

**MPSC Electronic Copy ** 2013-UA-189 Filed on 05/14/2015 **

employees. MPC's compensation philosophy is to target total compensation (i.e. base salary plus at-risk, or variable, compensation) at the median or 50th percentile of the market for comparable positions. The median philosophy means that 50% of companies pay more than Mississippi Power and 50% pay less. Targeting total compensation to the median of the market is overwhelmingly adopted in both the utility industry and general industry. Mr. David Wathen and I addressed the topic of compensation in his Direct Testimony and my Rebuttal Testimony filed in MPSC Docket No. 2013-UA-0189 filed May 23, 2014.

The Company believes that this at-risk and stock-based compensation is an appropriate and reasonable cost that it should be allowed to recover.

## 3. Pre-Construction Costs

**Q.  Does the Company believe, as Larkin proposes, that pre-construction costs were or should be disallowed?**

A.  No. The Company continues to believe that, in its Orders in MPSC Docket No. 2009-UA-0014, the Commission reserved its authority to make a final decision on the prudence of the $4.5 million in pre-construction costs under review at the time. The Company proposes that these pre-construction costs, including amounts for incentive and stock-based compensation, should remain on the books as capitalized costs and that their recoverability should be determined in the next prudence hearing to allow time for the Commission to complete a review of the MPC and Southern Company Services, Inc., (SCS) compensation programs. These pre-construction costs include exactly the same type of costs that Larkin recommended for deferral.

**\*\*MPSC Electronic Copy \*\* 2013-UA-189 Filed on 05/14/2015 \*\***

## 4. Aircraft Costs

**Q. Does the Company agree with Larkin's recommendation that aircraft costs totaling $490,271 be removed from the Kemper Project costs for the period through March 31, 2013?**

**A.** No, MPC does not. Travel is a necessary and prudent part of constructing the Kemper Plant. The Commission addressed the issue of private aircraft expenses in its Commission Rule 21.103 by requiring a flight log documenting the business purpose for each flight and an independent cost/benefit analysis conducted by an entity selected by the Commission. The Rule states:

> f. Expenditures associated with private aircraft, except when supported by appropriate documentation and justification, submitted by the utility seeking recovery, showing that such expenses are reasonable and result in benefits to ratepayers. For purposes of this subsection, "appropriate documentation and justification" shall include, but not be limited to:
>
> i. An independent cost/benefit analysis, conducted by an entity selected by the Commission, from which the Commission may determine the percentage of private aircraft cost recoverable in rates. Such cost/benefit analysis shall be conducted at such intervals as the Commission may determine.
>
> ii. An accurate flight log with a detailed explanation of the purpose for which each passenger is traveling so that the Commission can determine that the flights were taken for utility business purposes only.
>
> Source: Mississippi Code Annotated Section 77-3-45

The Company maintains that the aircraft costs included in the Kemper costs are the sum of only those flights that have been priced based on commercial flight prices.

---

Response To Surrebuttal Testimony of Cynthia F. Shaw
On Behalf of Mississippi Power Company
Page 7 of 11

**MPSC Electronic Copy ** 2013-UA-189 Filed on 05/14/2015 ***

These amounts do not include any allocated fixed cost associated in the ownership and operation and maintenance of the aircraft. Thus, we believe these costs to be "supported by appropriate [cost] documentation and justification."

Larkin has alleged that the information provided on the flight logs with respect to the trip purpose descriptions is not sufficient. A list of these deficiencies was not provided to the Company. The Company requests an opportunity to understand the alleged deficiencies in the flight logs and provide additional documentation.

Larkin also notes that the independent cost/benefit analysis noted in Rule 21 has not been performed. Because fundamental issues must be resolved before the Commission makes a determination regarding the recoverability of aircraft costs, MPC proposes that the Commission's decisions should be deferred until such time as the necessary study can be performed and the Company has the opportunity to work with Larkin on the flight logs. The information from these endeavors will provide the Commission with the necessary information for its determination of the recoverability of these costs.

5. **AFUDC on Unrecorded Liabilities**

Q. **Does the Company disagree with Larkin's position that the portion of the Company's AFUDC related to unrecorded liabilities should be disallowed?**

A. Yes. The Company has followed FERC's accounting requirements for calculating and accruing AFUDC on the Kemper Project capital costs. In Rule 3 of Mississippi Public Service Commission Rules and Regulations Governing Public Utilities Service, the Commission expressly adopted FERC's accounting requirements.

**MPSC Electronic Copy ** 2013-UA-189 Filed on 05/14/2015 **

The Company's AFUDC accrual policy, including the Company's inclusion of liabilities in its AFUDC account, is in accordance with FERC guidance. It has always been MPC's practice to record AFUDC on unpaid invoices to be paid within a reasonable billing cycle, as allowed by FERC. Exhibit___(CFS-20 REB) included in my May 23, 2014, Rebuttal Testimony presents the guidance set forth in the FERC Audit Manual that allows accrual of AFUDC on unpaid invoices to be paid within a reasonable billing cycle. The Company records AFUDC only on unpaid invoices verified for payment in the subsequent month.

Further, the Company's AFUDC calculation has been audited by Internal Audit, and it has also been audited by Deloitte in conjunction with its audit of MPC's annual financial statements. Both Internal Audit and Deloitte noted no findings with respect to the AFUDC calculation.

## 6. Land acquired for Liberty Mine

Q. In its testimony, Larkin questions, "...whether specific parcels of land that go unused for a significant period of time are considered 'used and useful'." Does the Company believe that the land purchased for the lignite mine is used and useful?

A. Yes, it does. However, because "used and useful" is a regulatory concept rather than an accounting concept, this issue is generally outside of the scope of my testimony; I will make only a general observation before discussing in detail how the land is accounted for.

Response To Surrebuttal Testimony of Cynthia F. Shaw
On Behalf of Mississippi Power Company
Page 9 of 11

**MPSC Electronic Copy ** 2013-UA-189 Filed on 05/14/2015 ***

Larkin and J.T. Boyd, both of whom are IMs for the Staff, appear to disagree as to the reasonableness of MPC's land acquisition strategy. As Mr. Huggins and Mr. Owen state in their testimony, the Staff's monitor, J.T. Boyd, believes that it was reasonable to purchase the land in question in advance of its use. The Company agrees with J.T. Boyd, who opined that purchasing the mine land in its entirety, which is considered one area, was a "reasonable and preferred strategy." JT Boyd noted that "if properties were only acquired when they are immediately ahead of the mining operation, it would put [MPC in a weak position]" and "would likely result in much higher land costs."[5] The decreased risk associated with MPC's strategy would appear to provide a current "usefulness" or benefit to MPC's customers.

**Q.   Why is the Company accounting for the land purchased for the mine as Plant-in-Service (PIS)?**

A.   Kemper is a 40-year project and as such will need a 40-year fuel supply. MPC has aggregated its mining operation as allowed under tax and accounting requirements, rather than segregating it into blocks. Accordingly, since the mine is in service, all mine assets, including land, have been placed in service. MPC has accounted for all the land purchases and leases in accordance with FERC's Uniform System of Accounts guidance for Plant-in-Service.

**Q.   Is the regulatory cost recovery for Plant Held for Future Use (PHFU) different from that for Plant-in-Service?**

---

[5] MPSC Docket No. 2013-UA-0189, Direct Testimony of William P. Wolf and Lee A. Miller of JT Boyd Company, filed April 25, 2014, pp. 6 – 7.

**\*\*MPSC Electronic Copy \*\* 2013-UA-189 Filed on 05/14/2015 \*\***

A.   No.  The Commission has allowed the inclusion of PHFU in rate base in previous PEP and ECO proceedings.  Therefore, regardless of whether the cost is classified as PIS or PHFU, based on this prior Commission treatment, MPC would be allowed to recover its carrying costs on the cost of the land.

## Summary

Q.   **Please summarize your testimony.**

A.   The Company does not agree with the issues raised by Larkin regarding internal audit, compensation, pre-construction costs, aircraft costs, AFUDC on unrecorded liabilities, or accounting for Liberty Mine land.  The Company has appropriately accounted for and reported its Kemper Project costs and believes these amounts should be allowed for recovery subject to the cost cap.

Q.   **Does this conclude your testimony?**

A.   Yes, it does.

Response To Surrebuttal Testimony of Cynthia F. Shaw
On Behalf of Mississippi Power Company
Page 11 of 11

**MPSC Electronic Copy ** 2013-UA-189 Filed on 05/14/2015 **

## BEFORE THE MISSISSIPPI PUBLIC SERVICE COMMISSION

**MISSISSIPPI POWER COMPANY**                    **DOCKET NO. 2013-UN-0189**
**EC-120-0097-00**

IN RE:        PETITION OF MISSISSIPPI POWER COMPANY FOR FINDING OF PRUDENCE IN CONNECTION WITH THE KEMPER COUNTY INTEGRATED GASIFICATION COMBINED CYCLE GENERATING FACILITY

### AFFIDAVIT OF CYNTHIA F. SHAW

PERSONALLY appeared before the undersigned officer authorized to administer oaths, Cynthia F. Shaw, who being duly sworn, deposes and says; that the foregoing response to surrebuttal testimony was prepared by her or under her supervision; that said testimony was prepared for use as response to surrebuttal testimony on behalf of Mississippi Power Company in the captioned proceeding; that the facts stated therein are true to the best of her knowledge, information and belief; and that if asked the questions appearing therein, her answers, under oath, would be the same.

This the 14th day of May, 2015.

_____
CYNTHIA F. SHAW

Sworn to and subscribed before me this 14th day of May, 2015.

_____
Notary Public

My Commission Expires:

_____

*STATE OF MISSISSIPPI*
*BRENDA KAY ALLEN*
NOTARY PUBLIC
ID No. 4542
My Commission Expires
August 10, 2018
*HARRISON COUNTY*

**MPSC Electronic Copy ** 2013-UA-189 Filed on 05/14/2015 ***