# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| ROBERT (BOB) FORMBY, on behalf of himself and all others similarly situated, <br><br>         Plaintiff, <br><br>    v. <br><br> DELOITTE & TOUCHE LLP and DELOITTE LLP, <br><br>         Defendants. | No. 1:22-cv-670-WMR |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN
## FURTHER SUPPORT OF THEIR MOTION TO DISMISS

Dated: November 14, 2022

Jessica P. Corley (Ga. Bar No. 572733)
Kevin J. O'Brien (Ga. Bar No. 714849)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Phone: (404) 572-4600
jpcorley@kslaw.com
kobrien@kslaw.com

Kenneth Y. Turnbull (admitted *pro hac vice*)
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
Phone: (202) 737-0500
kturnbull@kslaw.com

*Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..............................................................................1

ARGUMENT .....................................................................................................2

I.  The Court should dismiss the Section 10(b) claim as untimely. .........................2

    A.  The statute of limitations bars the Section 10(b) claim...................................2

    B.  The statute of repose bars any claim Plaintiff has standing to bring...............3

II.  Plaintiff fails to plead any misstatement by Deloitte with the specificity that the Reform Act requires...........................................................................................6

III. Plaintiff fails to allege the requisite strong inference of Deloitte's scienter. ......9

IV. Plaintiff fails to plead economic loss or loss causation. ...................................13

V. The Court should dismiss all claims for additional reasons. .............................15

CONCLUSION ..................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
  925 F.3d 1205 (11th Cir. 2019) ............................................................6

*Abu Dhabi Inv. Auth. v. Mylan N.V.*,
  2021 WL 516310 (S.D.N.Y. Feb. 10, 2021) .........................................4

*Aldridge v. A.T. Cross Corp.*,
  284 F.3d 72 (1st Cir. 2002).................................................................7

*Brophy v. Jiangbo Pharm., Inc.*,
  781 F.3d 1296 (11th Cir. 2015) ..................................................1, 9, 11

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
  137 S. Ct. 2042 (2017).....................................................................4–5

*City of Bristol Pension Fund v. Vertex Pharm. Inc.*,
  12 F. Supp. 3d 225 (D. Mass. 2014)...................................................14

*City of Pontiac Gen. Emps.' Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.*,
  806 F. Supp 2d 1267 (N.D. Ga. 2011).................................................6

*Cosby v. KPMG LLP*,
  2018 WL 3723712 (E.D. Tenn. Aug. 2, 2018)...................................12

*Danis v. USN Commc'ns, Inc.*,
  73 F. Supp. 2d 923 (N.D. Ill. 1999)....................................................7

*Denny v. Barber*,
  576 F.2d 465 (2d Cir. 1978) ...............................................................8

*Druskin v. Answerthink, Inc.*,
  299 F. Supp. 2d 1307 (S.D. Fla. 2004)................................................7

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)..........................................................................13

ii

*Floyd v. Deloitte & Touche LLP*,
  No. 3:19-cv-03304-MBS (D.S.C. Nov. 17, 2020)
  [unpublished bench ruling attached at Dkt. 36-5] ...............................1, 8, 12–13

*Freihofer v. Vt. Country Foods, Inc.*,
  2019 WL 2995949 (D. Vt. July 9, 2019)...............................................................4

*Garfield v. NDC Health Corp.*,
  466 F.3d 1255 (11th Cir. 2006) ...................................................................1, 9, 12

*Gavin/Solomonese LLC v. D'Arnaud-Taylor*,
  639 F. App'x 664 (2d Cir. 2016) ..........................................................................2

*Hogan v. Pilgrim's Pride Corp.*,
  2021 WL 1534602 (D. Colo. Apr. 16, 2021) ........................................................4

*In re Allied Cap. Corp. Sec. Litig.*,
  2003 WL 1964184 (S.D.N.Y. Apr. 25, 2013) ........................................................7

*In re Coca-Cola Enter. Inc. Sec. Litig.*,
  510 F. Supp. 2d 1187 (N.D. Ga. 2007).................................................................12

*In re Colonial Bancgroup, Inc. Sec. Litig.*,
  9 F. Supp. 3d 1258 (M.D. Ala. 2014) ..............................................................9, 10

*In re Doral Fin. Corp. Sec. Litig.*,
  563 F. Supp. 2d 461 (S.D.N.Y. 2008) .................................................................10

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
  843 F.3d 1257 (11th Cir. 2016) ..........................................................................15

*In re First Merchants Acceptance Corp. Sec. Litig.*,
  1998 WL 781118 (N.D. Ill. Nov. 4, 1998) ..........................................................12

*In re Health Mgmt., Inc. Sec. Litig.*,
  970 F. Supp. 192 (E.D.N.Y. 1997) ......................................................................12

*In re Microstrategy, Inc. Sec. Litig.*,
  115 F. Supp. 2d 620 (E.D. Va. 2000) ..................................................................12

*In re MiMedx Grp., Inc. Sec. Litig.*,
  2021 WL 7210372 (N.D. Ga. Mar. 25, 2021),
  *appeal docketed* (11th Cir. Feb. 28, 2022) ...................................................13–14

*In re Parmalat Sec. Litig.*,
  375 F. Supp. 2d 278 (S.D.N.Y. 2005) ...............................................................15

*In re Petrobras Sec. Litig.*,
  2016 WL 1533553 (S.D.N.Y. Feb. 2016) ...........................................................7

*In re HealthSouth Corp. Sec. Litig.*,
  261 F.R.D. 616 (N.D. Ala. 2009) ......................................................................6

*In re Teva Sec. Litig.*,
  512 F. Supp. 3d 321 (D. Conn. 2021)................................................................4

*Kuwait Inv. Off. v. Am. Int'l Grp., Inc.*,
  128 F. Supp. 3d 792 (S.D.N.Y. 2015) ...............................................................4

*Levine v. Bally Total Fitness Holding Corp.*,
  2006 WL 8460936 (N.D. Ill. Sept. 29, 2006)....................................................5

*Maxwell v. KPMG LLP*,
  520 F.3d 713 (7th Cir. 2008) ..........................................................................11

*McCullough v. Advest, Inc.*,
  2017 WL 3675787 (W.D. Pa. Aug. 25, 2017)....................................................5

*McCullough v. Advest, Inc.*,
  754 F. App'x 109 (3d Cir. 2018) (per curiam) ...................................................5

*Meyer v. Greene*,
  710 F. 3d 1189 (11th Cir. 2013) .................................................................14–15

*Roaring Fork Cap. SBIC, L.P. v. ATC Healthcare, Inc.*,
  2011 WL 1258504 (D. Colo. Mar. 29, 2011)......................................................2

*Rosenberg v. Gould*,
  554 F.3d 962 (11th Cir. 2009) .........................................................................15

*Sticher v. Indymac Fin. Servs., Inc.*,
   2014 WL 12284025 (N.D. Ga. Mar. 7, 2014) ..................................................2–3

*Tabor v. BodisenBiotech, Inc.*,
   579 F. Supp. 2d 438 (S.D.N.Y. 2008) ...................................................................8

*Ziemba v. Cascade Int'l, Inc.*,
   256 F.3d 1194 (11th Cir. 2001) ...............................................................1, 9, 10

**Statutes**

The Private Securities Litigation Reform Act,
   15 U.S.C. § 78u-4(b)...........................................................................................1, 6

**Administrative Rules**

Public Company Accounting Oversight Board,
   *The Auditor's Report on an Audit of Financial Statements When the*
   *Auditor Expresses an Unqualified Opinion and Related Amendments*
   *to PCAOB Standards*, Adopting Release No. 2017-001 (June 1, 2017),
   (https://pcaobus.org/Rulemaking/Docket034/2017-001-auditors-report-final-
   rule.pdf)...............................................................................................................3, 10

## PRELIMINARY STATEMENT

Plaintiff's opposition brief ("Opp.") (Dkt. 36) confirms that the Complaint fails to plead a viable and timely securities fraud claim against Deloitte in accordance with the Reform Act's stringent pleading standards.[1] Plaintiff fails to point to any particularized allegations that would substantiate his speculation that (1) Southern engaged in a long-running accounting fraud no one else has noticed, despite a prior securities suit and SEC investigation, and (2) Deloitte knew about that fraud and nevertheless knowingly issued false opinions on each of Southern's 2012 to 2019 annual financial statements. Instead, Plaintiff simply repeats his conclusory allegations that GAAP required Southern to recognize unspecified losses at unspecified earlier periods and Deloitte must have known this. These are precisely the type of threadbare allegations that the Eleventh Circuit has deemed insufficient in a trio of cases (*Brophy*, *Garfield*, and *Ziemba*) that Plaintiff fails to address. Instead, he asks the Court to disregard these and other published precedents and rely on an unpublished transcript of a bench ruling by a South Carolina district court in a case Plaintiff's counsel previously brought (*Floyd*), which denied a motion to dismiss without citing any case law. The Court should reject Plaintiff's invitation, apply this Circuit's precedents, and dismiss the Complaint with prejudice.

---

[1] Defined terms have the same meaning as in the opening brief ("Mot.") (Dkt. 34-1).

## ARGUMENT

### I.    The Court should dismiss the Section 10(b) claim as untimely.

#### A.    The statute of limitations bars the Section 10(b) claim.

Plaintiff does not dispute that a reasonably diligent plaintiff would have begun investigating in August 2017, after Southern had disclosed a $3 billion loss and an SEC investigation, and that his purported evidence of scienter, *i.e.*, Shaw's 2015 testimony (¶ 15), was available more than two years before he filed suit. For this reason alone, Plaintiff has pleaded himself out of court. *See Gavin/Solomonese LLC v. D'Arnaud-Taylor*, 639 F. App'x 664, 667 (2d Cir. 2016); *Roaring Fork Cap. SBIC, L.P. v. ATC Healthcare, Inc.*, 2011 WL 1258504, at *10 (D. Colo. Mar. 29, 2011) (dismissal because "facts [plaintiff] relies upon as proof of scienter . . . were extant" two years earlier). Plaintiff ignores these on-point decisions dismissing 10(b) claims and instead offers the distraction of factually inapposite cases. Opp. 6.

Apparently recognizing that his reliance on Shaw's testimony forecloses this suit, Plaintiff retreats to arguing that Deloitte's 2019 audit report provided "particularized" evidence about Deloitte's involvement with Kemper. Opp. 6. But this argument is flatly contradicted by the Complaint itself, which quotes the 2019 audit report (¶¶ 261–62) and controls. *See Sticher v. Indymac Fin. Servs., Inc.*, 2014 WL 12284025, at *1 (N.D. Ga. Mar. 7, 2014) (noting that a "party cannot amend

2

[its] complaint via legal argument"). Specifically, the Complaint pleads that Deloitte's 2019 audit report discussed Southern's Vogtle plant and Deloitte's 2019 audit *only*—not Kemper, "Southern plants" generally (Opp. 5), or Deloitte's prior audits. ¶¶ 261–62. Further, the report described Vogtle in ways materially different from Kemper, *e.g.*, Vogtle was a nuclear plant "not subject to a cost cap," and owned and regulated by different entities. *Id.* Finally, the notion that the 2019 audit report "suggested" prior Deloitte involvement with Kemper is irrelevant, because Plaintiff admits that Shaw's 2015 testimony had previously "revealed this [suggestion] to be true." ¶ 15. The 10(b) claim is untimely and should be dismissed.[2]

**B.    The statute of repose bars any claim Plaintiff has standing to bring.**

Plaintiff's argument that the repose period begins to run at the end of a series of continuing violations—rather than from each of Deloitte's allegedly false audit opinions—is wrong. Opp. 7–8. It runs afoul of Supreme Court precedent and the Complaint, which does not allege continuing violations. Nor can Plaintiff rely on members of the proposed class to satisfy his own standing requirements. *Id.* 9.

---

[2] Plaintiff is wrong that "Deloitte believes the uncertainties associated with the construction of the Kemper Plant were required to be identified as a CAM." Opp. 5. The new PCAOB standard requiring disclosure of critical audit matters, AS 3101 ¶ .05(b), only became effective for fiscal years ending on or after June 30, 2019, after Southern had completed construction of Kemper. *See* PCAOB Adopting Release No. 2017-001 at 114 (June 1, 2017); Mot. 7.

The continuing violations doctrine is a form of "equitable tolling," *Kuwait Inv. Off. v. Am. Int'l Grp., Inc.*, 128 F. Supp. 3d 792, 808 (S.D.N.Y. 2015), and "statutes of repose are not subject to equitable tolling," *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2051 (2017). Following the Supreme Court's holding in *ANZ*, courts have consistently declined to toll the statute of repose for 10(b) claims based on alleged continuing violations. *See Hogan v. Pilgrim's Pride Corp.*, 2021 WL 1534602, at *6–7 (D. Colo. Apr. 16, 2021); *Abu Dhabi Inv. Auth. v. Mylan N.V.*, 2021 WL 516310, at *3 (S.D.N.Y. Feb. 10, 2021); *Freihofer v. Vt. Country Foods, Inc.*, 2019 WL 2995949, at *4 (D. Vt. July 9, 2019).

Plaintiff's assertion that a "majority" of courts hold that the repose period runs from the *last* alleged misrepresentation is false. Opp. 7. To support this position, he cherry picks the words "last culpable act" from *ANZ*, but, as multiple courts have held in rejecting this position, this phrase "cannot be taken to mean that, in a Section 10(b) case, a 'violation' for the purpose of Section 1658(b)(2) occurs only upon the last culpable act or omission, rather than with each culpable act or omission," because that construction would be at odds with *ANZ*'s holding. *In re Teva Sec. Litig.*, 512 F. Supp. 3d 321, 335 (D. Conn. 2021); *accord Abu Dhabi*, 2021 WL 516310, at *2–3. Plaintiff also claims that there is an open question on this point based on an absence of Eleventh Circuit authority (Opp. 8 n.1), but the Supreme

Court's rejection of equitable tolling in *ANZ* controls. And the district court cases Plaintiff cites all predate *ANZ* (Opp. 7–8), with one unpersuasive exception.[3]

Further, even if the continuing violations doctrine were available in principle, Plaintiff has not alleged such violations in his Complaint. Instead, Plaintiff alleges (as he must) that Deloitte issued *annual* opinions, which—like all standard audit opinions—addressed different financial statements as of and for discrete reporting periods. *See* ¶ 246 (auditor obtains evidence "as of the dates of its audits"). For this reason, courts have held that audit opinions are "separately identifiable discrete acts," such that there "is no basis for applying the continuing violation doctrine." *Levine v. Bally Total Fitness Holding Corp.*, 2006 WL 8460936, at *8 (N.D. Ill. Sept. 29, 2006) (dismissing 10(b) claim against auditor based on statute of repose). Plaintiff has not cited a single case applying this doctrine to an auditor's opinions.

Finally, having purchased stock before Deloitte issued its post-February 2017 opinions, Plaintiff is forced to concede his "inability to establish reliance" on any opinion not yet beyond the repose period. Opp. 9 n.2. That concession ends this case,

---

[3] The exception is *McCullough v. Advest, Inc.*, 2017 WL 3675787 (W.D. Pa. Aug. 25, 2017). There, the district court issued its order shortly after *ANZ*, dismissed the claim on other grounds, and based its assertion about the "majority" of courts on *pre*-ANZ district court cases. On appeal, the Third Circuit noted that a statute of repose "cannot be tolled" but, affirming on other grounds, stated it "need not address this issue." 754 F. App'x 109, 111 n.1 (3d Cir. 2018) (per curiam).

despite Plaintiff's appeal to later purchasers in the proposed class (*id.* 9), because a "named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone—not for himself, and not for any other member of the class." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1211 (11th Cir. 2019).[4]

## II.    Plaintiff fails to plead any misstatement by Deloitte with the specificity that the Reform Act requires.

Plaintiff provides no meaningful response to the four reasons that require dismissal for failure to plead a Deloitte material misstatement. Mot. 15–18.

First, Plaintiff ignores *City of Pontiac v. Schweitzer-Mauduit Int'l, Inc.*, 806 F. Supp 2d 1267 (N.D. Ga. 2011), which substantiates Deloitte's puzzle-pleading criticism. There, the court dismissed a 10(b) claim because the complaint contained "a series of . . . lengthy block quotes" followed by "the same conclusory list of deficiencies." *Id.* at 1293–94. Here, similarly, Plaintiff has block-quoted a sample Deloitte audit opinion (¶ 232), grouped *eight* separate Deloitte opinions into one paragraph (¶ 233 n.107), alleged collectively and conclusorily that all these statements were false (¶ 236), and repeated this tactic with respect to other portions

---

[4] *In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616 (N.D. Ala. 2009) (Opp. 9 n.2), does not apply because, here, Mr. Formby is the only plaintiff. There are no "additional named plaintiffs" who could assert a claim that he lacks standing to assert. 261 F.R.D. at 648.

of Deloitte's separate opinions (¶¶ 233–36, 265–66). That is the essence of puzzle pleading and warrants dismissal for violating the particularity requirement.[5]

Second, Plaintiff tries to wish away the particularity requirement, which obliges Plaintiff to allege at least that a particular financial statement on which Deloitte opined contained materially misstated items, including the amounts of and reasons for the misstatement. Mot. 16–17. That detail is necessary "to allow the Court to assess the magnitude and materiality of the fraud." *In re Allied Cap. Corp. Sec. Litig.*, 2003 WL 1964184, at *5 (S.D.N.Y. Apr. 25, 2013). Plaintiff's conclusory allegation that "billions of dollars of Kemper Plant-related losses were required to be recognized earlier" (Opp. 21) obviously falls short, because it melds together eight separate opinions and does not allege specific items, amounts, and reasons.[6]

---

[5] *In re Petrobras Sec. Litig.*, 2016 WL 1533553 (S.D.N.Y. Feb. 19, 2016) (Opp. 20), which says nothing about puzzle pleading, *supports* Deloitte's motion because it dismissed a 10(b) claim where a plaintiff failed to plead "specific allegations regarding [the auditor's] awareness of, and reaction to, information regarding . . . over-budget construction projects." 2016 WL 1533553, at *2.

[6] Plaintiff also denies the requirement to plead specific amounts (Opp. 21), but his two cases are inapposite. In both, courts deemed material the failure to record *any* losses based on *undisclosed* arrangements. *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 79 (1st Cir. 2002) (no reserves for undisclosed contingencies); *Danis v. USN Commc'ns, Inc.*, 73 F. Supp. 2d 923, 929–30, 935 n.6 (N.D. Ill. 1999) (no write-downs for receivables based on "fictitious sales"). Here, Plaintiff alleges that Southern's *disclosed* losses were insufficient and untimely. That allegation requires specific amounts. *See Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1327–28 (S.D. Fla. 2004) (distinguishing *Aldridge* on this basis).

Third, Plaintiff denies that his Complaint rests on fraud-by-hindsight (Opp. 21), but his allegation that Southern "belatedly report[ed]" losses that it should have reported "earlier" (¶ 21) is just that. *See Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (no misstatement pleaded when plaintiff "seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones"). Ignoring *Denny*, Plaintiff points to a single paragraph (¶ 236), which alleges that Southern recognized losses "incrementally" rather than "at the time they were reasonably estimable." But there are no facts pleaded to support that conclusory allegation. On the contrary, the Complaint references Southern's disclosures, which explain the changing circumstances, such as increased labor costs, that warranted revised cost estimates and recognition of additional losses. *See* Mot. 6 n.3.

Finally, Plaintiff ignores *Tabor v. BodisenBiotech, Inc.*, 579 F. Supp. 2d 438, 454 (S.D.N.Y. 2008), which holds that, when a plaintiff fails to plead a material error in a company's financial statements (as here), an auditor's alleged misstatement regarding its compliance with auditing standards is immaterial. Tacitly conceding the point, Plaintiff pivots to *Floyd* (Dkt. 36-5), which he says involved "identical" alleged audit failures. Opp. 22. But that bench ruling did not address the immateriality issue even generally, much less cite any case law. The Court should dismiss the Complaint because it fails to plead any material misstatement.

### III.   Plaintiff fails to allege the requisite strong inference of Deloitte's scienter.

Plaintiff does not address the Eleventh Circuit's trio of cases that establish the high bar for pleading an independent auditor's scienter. Those cases, and district court decisions applying them, reject as entirely insufficient: (1) allegations that the auditor failed to follow auditing standards, which sound in negligence, *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1208–09 (11th Cir. 2001); (2) allegations that the auditor had access to its client, because every auditor "depends on its client to provide the information base for the audit," *Brophy v. Jiangbo Pharm., Inc.*, 781 F.3d 1296, 1307 (11th Cir. 2015); *see also In re Colonial Bancgroup, Inc. Sec. Litig.*, 9 F. Supp. 3d 1258, 1268–69 (M.D. Ala. 2014); and (3) "alleging scienter in general, conclusory terms," including labeling such allegations as "red flags," *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1268, 1270 (11th Cir. 2006). Instead, a plaintiff must plead *specific facts*, such as "tips, letters, or conversations," raising a strong inference that the auditor knew of and recklessly disregarded the client's accounting fraud. *Ziemba*, 256 F.3d at 1210. Failing to come forward with any such factual allegations here (because there are none), Plaintiff's Opposition relies solely on the categorically deficient types of allegations the Eleventh Circuit has rejected.

First, Plaintiff confirms that his allegations sound in negligence. He argues that his allegations "make it inconceivable that Deloitte complied with PCAOB

standards by obtaining sufficient audit evidence[.]" Opp. 16. Of course, allegations that the auditor failed to comply with PCAOB auditing standards (or their predecessor, Generally Accepted Auditing Standards) are insufficient to plead scienter. *Ziemba*, 256 F.3d at 1208 (affirming dismissal because "allegations of violations of GAAS . . . do not satisfy the particularity requirement of Rule 9(b)").

Second, Plaintiff asserts that Deloitte had access to information, going so far to say that Deloitte had "far greater access to information" about the Kemper plant than a typical auditor. Opp. 12. These assertions are also legally insufficient because "access is not tantamount to auditor awareness [of fraud]," *Colonial*, 9 F. Supp. 3d at 1268, even when plaintiffs allege that the auditor had "'limitless access to information concerning the Company's operations.'" *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) (dismissing 10(b) claim against auditor).[7]

---

[7] Nor do these assertions have any factual basis in Plaintiff's Complaint. First, Deloitte does not "concede[] it was required to employ [procedures] to address CAMs [critical audit matters] relating to the construction of" the Kemper plant, which is the purported basis for Plaintiff's "greater access" allegation. Opp. 12. As discussed (*supra* at 3 n.2), the new PCAOB standard requiring disclosure of CAMs was not even in effect during the construction of the Kemper plant. Second, the assertion that a CAM requires "heightened scrutiny" (Opp. 13) is false: the PCAOB stated in its adopting release that the new CAM disclosure requirement did "*not* impose new performance requirements." PCAOB Adopting Release No. 2017-001 at 87 (June 1, 2017) (emphasis added).

Finally, Plaintiff does nothing to substantiate his conclusory assertion of "red flags." Opp. 14–15. He points to "missed deadlines" in the Kemper construction schedule, but Plaintiff does not explain how this *operational* issue indicated any *accounting* fraud. *See Maxwell v. KPMG LLP*, 520 F.3d 713, 716 (7th Cir. 2008) ("auditors' concern is with the accuracy of the company's books," not its operations). Plaintiff also highlights "blown budget estimates" (Opp. 14), but the Complaint references Southern's related disclosures, which provide a far more compelling inference that Southern revised its cost estimates for a complex engineering project because of changing circumstances and inputs—a common occurrence. *See supra* at 8; Mot. 6 n.3. Nor does Southern's disclosure of an SEC investigation in 2016 (¶ 164) and a DOJ investigation in 2019 (Dkt. 36-4) constitute a red flag, because the Eleventh Circuit has explained that the "mere existence of an SEC investigation" does not suffice to plead scienter. *Brophy*, 781 F.3d at 1304. Finally, the 2016 *New York Times* article reports allegations of corporate mismanagement and misstatements concerning Kemper's scheduled completion date, not accounting fraud.[8] In short, Plaintiff fails to allege any genuine red flags,

---

[8] The *New York Times* article was featured in the previous *Monroe* class action, which did not allege any accounting fraud. *See* Am. Compl. ¶¶ 48–55, *Monroe*, No. 1:17-cv-00241-MHC (N.D. Ga. June 12, 2017) (Dkt. 28).

much less facts showing that Deloitte recklessly ignored them. *See Garfield*, 466

F.3d at 1255, 1269 (affirming dismissal where plaintiff did not allege "any facts that

show [the auditor] was actually aware or should have known" of fraud).[9]

Even beyond the other deficiencies in his brief, it speaks volumes that Plaintiff

fails to address any auditor-related decisions by or within the Eleventh Circuit. Opp.

17–18. Instead, he relies on four out-of-circuit district court decisions that are readily

distinguishable because, in each, the complaint included allegations describing

specific documents and records that the auditors had seen and that were inconsistent

with particular material assertions in their clients' financial statements.[10] Plaintiff

also cleaves to the *Floyd* bench ruling, which merely regurgitates the allegations in

---

[9] Plaintiff's request that the Court consider his allegations "holistically" (Opp. 19) is unavailing because they fail "both individually and in aggregate." *In re Coca-Cola Enter. Inc. Sec. Litig.*, 510 F. Supp. 2d 1187, 1200 (N.D. Ga. 2007).

[10] *See In re Health Mgmt., Inc. Sec. Litig.*, 970 F. Supp. 192, 198, 202–03 (E.D.N.Y. 1997) (auditor accepted implausible explanation that fictitious inventory had been in-transit during physical inventory count despite no history of intra-facility shipments); *In re First Merchants Acceptance Corp. Sec. Litig.*, 1998 WL 781118, at *6 (N.D. Ill. Nov. 4, 1998) (auditor observed glaringly inconsistent financial statement items, such as a 220% increase in bad debt write-offs but mere 20% increase in bad debt reserves, that led a new CFO to quickly discover the fraud); *In re Microstrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 637, 653–54 (E.D. Va. 2000) (auditor saw "unexecuted contracts" on which company improperly recorded revenue); *Cosby v. KPMG LLP*, 2018 WL 3723712, at *1, 5 (E.D. Tenn. Aug. 2, 2018) (auditor knew that company used engineering reports to estimate the fair value of its oil-and-gas reserves, despite those reports containing an "express warning" they were not for that purpose).

that case—including the alleged failure to follow PCAOB standards, *see* Tr. 80:24–81:8 (Dkt. 36-5)—and pronounces them sufficient, without analysis. The Court should follow the applicable Eleventh Circuit authority, which requires dismissal of the Complaint for failure to plead a strong inference of scienter.

## IV.   Plaintiff fails to plead economic loss or loss causation.

Plaintiff does not dispute that under *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005), his sole damages allegation—that he purchased shares at inflated prices (¶ 287)—is insufficient to plead loss causation. Instead, he advances an unpleaded "materialization of the concealed risk" theory of loss causation (Opp. 24) that the Eleventh Circuit has never accepted and this Court expressly "decline[d] to do" itself. *In re MiMedx Grp., Inc. Sec. Litig.*, 2021 WL 7210372, at *5 (N.D. Ga. Mar. 25, 2021), *appeal docketed* (11th Cir. Feb. 28, 2022). But even if accepted, this theory fails here for obvious reasons.

First, Plaintiff points to Southern's admission that it would not meet the May 2014 COD as a materialized risk. Opp. 24. Southern, however, announced that news in October 2013, and Plaintiff purchased stock in 2015, long *after* this disclosure. ¶¶ 26, 121. Under the efficient market theory (¶ 270), that information (or "risk") was incorporated into the stock price by the time Plaintiff purchased, such that the purported prior concealment of this risk could not have caused his loss. *See MiMedx*,

2021 WL 7210372, at *6 (the market "cease[s] to attribute the artificial inflation to the stock's price when the truth is finally revealed"); *City of Bristol Pension Fund v. Vertex Pharm. Inc.*, 12 F. Supp. 3d 225, 235 (D. Mass. 2014) (a "plaintiff who purchased after a corrective disclosure . . . would have no standing").

Second, Plaintiff points to stock price declines when "Southern began disclosing increasing losses once the $2.88 billion cap was breached." Opp. 24 (citing ¶ 21). The cited paragraph refers to the losses disclosed in Southern's Q2 2017 quarterly SEC filing. Plaintiff does not allege that these losses were the materialization of a risk, but instead that this Southern filing was itself a fraudulent statement that continued to conceal Southern's true position. *See* ¶ 185. "Plaintiff cannot have it both ways and simultaneously argue that a misstatement itself constituted a corrective disclosure." *MiMedx*, 2021 WL 7210372, at *3.

Finally, neither the timing of the Kemper plant completion nor Southern's ability to construct it at costs beneath the cap was the subject of Deloitte's audit opinions. Those opinions addressed only whether Southern's annual financial statements were fairly presented in material respects, *not* its operations. *See* Mot. 4 & Ex. A; *Meyer v. Greene*, 710 F. 3d 1189, 1197 (11th Cir. 2013) (for loss causation purposes a disclosure "must at least relate back to the misrepresentation and not to

some other negative information about the company"). The Court should dismiss the Complaint for failure to plead loss causation as to any alleged misrepresentation.

## V.     The Court should dismiss all claims for additional reasons.

Plaintiff does not dispute that defendant Deloitte LLP did not make any statement and cannot be directly liable under 10(b). *See In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1268 (11th Cir. 2016). Instead, he suggests that Deloitte LLP (the non-auditor parent) is vicariously liable for Deloitte & Touche LLP's (the auditor's) statements. Opp. 25. But Plaintiff fails to assert any theory of vicarious liability or plead any factual allegations of control, let alone allegations similar to those that supported such liability in *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005). *Compare id.* at 294 (alleging one entity "took actions in directing" auditors at another entity) *with* ¶¶ 27–28 (alleging Deloitte & Touche LLP is a subsidiary of Deloitte LLP).  Deloitte LLP is not a proper defendant.

Finally, Plaintiff's footnoted request for leave to amend (Opp. 25 n.7), without any proffered description of the proposed amendment, should be denied as procedurally improper and substantively inadequate. *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009).

## <u>CONCLUSION</u>

The Court should dismiss all claims with prejudice.

Respectfully submitted this 14th day of November, 2022.

/s/ Jessica P. Corley
Jessica P. Corley (Ga. Bar No. 572733)
Kevin J. O'Brien (Ga. Bar No. 714849)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Phone: (404) 572-4600
jpcorley@kslaw.com
kobrien@kslaw.com

Kenneth Y. Turnbull (admitted *pro hac vice*)
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
Phone: (202) 737-0500
kturnbull@kslaw.com

*Counsel for Defendants*

## **RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that this document has been prepared with

one of the font and point selections approved by the Court in Local Rule 5.1(C).

*/s/* Jessica P. Corley

Jessica P. Corley

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this day a copy of the foregoing was filed and served using the Court's CM/ECF system, which will send notification of such filing to ECF registered participants.

DATED this 14th day of November, 2022.

/s/ Jessica P. Corley
Jessica P. Corley