**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ROBERT (BOB) FORMBY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DELOITTE & TOUCHE LLP and DELOITTE LLP,<br><br>Defendants. | CIVIL ACTION NO.<br>1:22-cv-00670-WMR |

**ORDER**

Before the Court is Defendants Deloitte & Touche LLP and Deloitte LLP's Motion to Dismiss. [Doc. 34]. The Court held a hearing on this motion on December 6, 2022. [Doc. 41]. After careful consideration of the parties' arguments, the applicable law, and the relevant parts of the record, and for the reasons discussed herein, Defendants' motion is **GRANTED**.

## I. Background

This case arises out of the construction of a power plant in Kemper, Mississippi ("Kemper Project") by the utility company Southern Company ("Southern") and its subsidiaries. [Doc. 1 at 5]. Plaintiff alleges that Southern was able to begin the Kemper Project due to representations that it would result in a clean coal power

plant, the plant would be completed by May 2014, and it would be completed within a budget of $2.88 billion. [*Id.* at 5–6]. Plaintiff asserts that Southern fell short of each of these three goals and alleges that this resulted in losses to Southern and its shareholders. [*Id.* at 5–7].

The case before the Court, however, is not filed against Southern. Instead, Plaintiff has filed suit against Defendants for allegedly misleading investors while acting as Southern's independent financial auditor. [*Id.* at 5]. Plaintiff filed this suit pursuant to Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, ("Section 10(b)") and Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a) ("Section 17(a)"). Plaintiff alleges that Defendants mislead investors by issuing audit reports that misrepresented Southern's financial losses and the delays of the Kemper Project. [Doc. 1 at 5]. Likewise, Plaintiff claims that these misrepresentations induced him to purchase Southern securities in 2015 that he would not have otherwise purchased had he known the allegedly concealed facts about the losses and delays on the Kemper Project. [*Id.* at 16, 95]. Plaintiff also seeks to certify a class of similarly situated individuals who were also allegedly mislead to purchase Southern's securities by Defendants' actions. [*Id.* at 5].

In response, Defendants filed the Motion before the Court. [Doc. 34]. Defendants argue that Plaintiff's claim should be dismissed because it is both timed-barred and fails to state a claim. [Doc. 34-1 at 8–9].

## II. Discussion

### a. Section 10(b) Claim:

#### i. *Statute of Limitations*

A claim under Section 10(b) must plausibly plead six elements: "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the misrepresentation or omission and the loss, commonly called 'loss causation.'" *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019). A Section 10(b) claim also must be filed within "2 years after the discovery of the facts constituting the violation." 28 U.S.C. § 1658(b). This limitations period "does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered the facts constituting the violation, including scienter—irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (internal quotation marks omitted). Furthermore, "[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003)) *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

The Complaint before the Court shows that a reasonably diligent plaintiff would have been aware of the facts that gave rise to the claim before the Court by February 2018. [Doc. 1 at 53–56]. Plaintiff filed this suit on February 17, 2022. Thus, the following analysis shows that Plaintiff's claim is barred by the statute of limitations.

The core of Plaintiff's Complaint is that Defendants' audits of Southern's financial statements contained misrepresentations that mislead Plaintiff to purchase Southern securities that he would not have otherwise purchased had he been aware of the financial situation of the Kemper Project. [*Id.* at 5–7, 95:287]. The Eleventh Circuit has recognized that a financial statement certified as true that contains "glaring accounting irregularities or other 'red flags[]' [indicating] that the financial statements contained material misstatements or omissions[]" could show the necessary scienter to give rise to a Section 10(b) claim. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006). Here, Plaintiff's Complaint alleges that Defendants' accounting reports contain such red flags because Defendants certified that Southern's Forms 10-K from 2012–2019 contained no material misstatements despite public allegations that Southern had concealed financial losses since 2014. [Doc. 1 at 75, 78]. Plaintiff also claims that he was not aware of these misrepresentations until February 23, 2020. [*Id.* at 83–87]. However, Plaintiff's

Complaint shows that a reasonably diligent plaintiff would have discovered sufficient information to assert the claim before the Court by February 2018.

Plaintiff purchased the securities at issue in 2015. [*Id.* at 16:26]. The Complaint alleges three public disclosures in 2015, 2016, and 2017 that would have made a reasonably diligent plaintiff aware of the facts Plaintiff alleges gave rise to his claims. Likewise, the Complaint alleges three corresponding financial reports publicly filed with the SEC that contradict these disclosures. The combination of (1) these public allegations that Southern and Defendants had misrepresented losses related to the Kemper Project and (2) Defendants' statements to the SEC that Southern had not misrepresented these losses was such that "a reasonably diligent plaintiff would have discovered the facts constituting the violation" by 2018. *Merck & Co.*, 559 U.S. at 653.

First, the Complaint alleges that a comptroller for Southern's subsidiary Mississippi Power, Ms. Cynthia Shaw, testified before the Mississippi Public Service Commission ("MPSC") in 2015 that Defendants were auditing the finances of Southern's Kemper Project. [Doc. 1 at 11:15, 77:238]. Plaintiff further alleges that Ms. Shaw claimed that "Deloitte has issued unqualified opinions on the company's financial statements since the inception of the Kemper project and prior." [*Id.* at 11:15]. These claims at a public hearing were sufficient for a reasonably diligent plaintiff to discover that Defendants were acting as an auditor for Southern

and the Kemper Project and that an investor should investigate as to whether Southern and Defendants had misreported the finances of the Kemper Project.

The Complaint also states that Defendants audited Southern's Form 10-K for 2015, filed with the SEC on February 26, 2016. [*Id.* at 50; Doc. 34-3]. This Form 10-K states that Defendants were serving as Southern's independent auditor and that "[i]n [Defendants'] opinion, [this Form 10-K] present[s] fairly, in all material respects, the financial position" of Southern for 2014 and 2015. This statement by Defendants was made to the SEC concerning Southern's finances for the same year that Ms. Shaw alleged that Defendants were misreporting Southern's finances. [Doc. 1 at 11:15, 77:238]. The conflict between Ms. Shaw's public testimony and Defendants' statement in a publicly available Form 10-K is enough to prompt a reasonably diligent plaintiff to investigate whether Defendant and Southern were misrepresenting Southern's finances.

Second, the Complaint relies on a New York Times article published on July 5, 2016, detailing financial problems with Southern's Kemper Project. [*Id.* at 19:38 n.5]. The article alleged that a former employee whistleblower along with more than 30 other individuals accused Southern's management of concealing cost overruns on Kemper Project in 2014. Ian Urbina, *Piles of Dirty Secrets Behind a Model 'Clean Coal' Project*, N.Y. TIMES (July 5, 2016), https://www.nytimes.com/2016/07/05/science/kemper-coal-mississippi.html. The

article also reported that the cost of the Kemper Project had increased by $2.1 billion dollars since its initial estimate and alleges that these increases "were inevitable, foreseeable and, in fact, were foreseen [by Southern]." *Id.* The article further reported that Southern was subject to both an SEC investigation and lawsuit due to allegations of fraud. *Id.* While the article does not detail Defendants' involvement as an auditor, it was public information by 2016 that Defendants were serving as the independent auditor for Southern and the Kemper Project. [Doc. 1 at 11:15].

The Complaint also states that the Defendants audited Southern's Form 10-K for 2016, filed with the SEC on February 22, 2017. [*Id.* at 52:175; Doc. 34-10]. This 10-K Form also states that Defendants were serving as Southern's independent auditor and that "[i]n [Defendants'] opinion, [this Form 10-k] present[s] fairly, in all material respects, the financial position" of Southern for 2015 and 2016. [Doc. 34-10 at 5]. This representation by Defendants was made concerning Southern's finances for the same year that the New York Times article alleged that Southern had concealed losses on the Kemper Project since 2014. Ian Urbina, *Piles of Dirty Secrets Behind a Model 'Clean Coal' Project*, N.Y. TIMES (July 5, 2016), https://www.nytimes.com/2016/07/05/science/kemper-coal-mississippi.html. This statement by Defendants that Southern had accurately represented its finances to the SEC allegedly contradicts the New York Times article and was publicly available to Plaintiff as of February 2017. The combination of this article and Defendants'

allegedly contradictory statements is sufficient to alert a reasonably diligent plaintiff that they should begin investigating whether Defendants were involved in concealing the financial problems of the Kemper Project. *See Monroe Cnty. Employees' Ret. Sys. v. S. Co.*, No. 1:17-CV-241-MHC, 2018 WL 1558577, at *5 (N.D. Ga. Mar. 29, 2018) (noting that the publication of the same New York Times article could be considered evidence of scienter for a Section 10(b) claim that a reasonably diligent plaintiff could discover).

Third, the Complaint alleges that Southern reported losses of $3.12 billion in the second quarter of 2017 through a publicly available Form 10-Q on August 2, 2017. [Doc. 1 at 54:179]. The Complaint further alleges that disclosure of these losses caused Southern's stock price to drop from $50.09 to $47.91 per share with a total of over $2 billion in lost stock value. [*Id.* at 14:21]. While the Kemper Project reported losses every quarter since 2012, the Complaint details that Defendants and Southern had never reported a loss in the billions of dollars in a single quarter. [*Id.* at 54–56].

The Complaint also states that the Defendants audited Southern's Form 10-K for 2017, filed with the SEC on February 21, 2018. [*Id.* at 54:182; Doc. 34-5]. Plaintiff alleges that Defendants audited this Form 10-K for the same year that Southern reported billions of dollars in losses; yet, Defendants issued Southern a "'clean' audit report" for that year. [Doc. 1 at 75:231]. Large losses, drops in stock prices, and

corresponding SEC filings are the type of financial red flags that courts have ruled are sufficient for a reasonably diligent plaintiff to discover possible Section 10(b) violations. *See McCullough v. Advest, Inc.*, 754 F. App'x 109, 112 (3d Cir. 2018) (holding that a "significant drop in stock value and SEC filings" were sufficient for a reasonably diligent plaintiff to discover a potential 10(b) violation).

The Court acknowledges that a drop in stock prices or SECs filings disclosing losses alone may not be sufficient for a reasonably diligent plaintiff to discover financial fraud. *La Grasta*, 358 F.3d at 847. In this case, however, Plaintiff alleges all of the following happened by February 2018: allegations at a public hearing in 2015 by an employee of one of Southern's subsidiaries that both Defendants and Southern had been actively concealing losses on the Kemper Project since 2014 [Doc. 1 at 75]; public disclosure of an SEC investigation of the Kemper Project on May 5, 2016 [*id.* at 51:164]; publication of a New York times article on July 5, 2016, alleging that Southern concealed losses on the Kemper Project [*id.* at 19]; a Section 10(b) lawsuit filed on February 27, 2017, against Southern based on the same facts before this Court [*id.* at 53:174]; a public disclosure on August 2, 2017, by Southern of billions of dollars in losses [*id.* at 54:179]; a drop in stock prices in 2017 [*id.* at 14]; and audits by Defendants in years 2015–2017 stating that Southern's reporting on its finances was accurate despite contrary allegations [*id.* at 54–56]. Likewise, all of these facts were publicly available by February of 2018. Together, these are the

types of red flags that would cause a reasonably diligent plaintiff to begin investigating the possibility of a Section 10(b) violation. Furthermore, Plaintiff's allegations that Defendants actively concealed losses on the Kemper Project by issuing misleading audit reports shows that the evidence of scienter that Plaintiff relies on to assert the claim before the Court was also publicly available by February 2018. Thus, Plaintiff's claim is barred by the statute of limitations. *See Merck & Co.*, 559 U.S. at 653 ("[T]he limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' including scienter[.]").

Plaintiff argues that facts giving rise to a Section 10(b) claim were not publicly available until February 2020. [Doc. 1 at 83:257]. The facts Plaintiff relies on, however, are reports issued by Defendants concerning financial uncertainty in the construction of Plant Vogtle—a wholly separate project than the one making up the basis of Plaintiff's claim. [*Id.* at 83–87]. Plaintiff cannot rely on Defendants' disclosures concerning Plant Vogtle for statute of limitations purposes when the face of the Complaint states: "This case arises out of the abandonment of Southern's 'clean coal' electric power plant in Kemper, Mississippi [] in 2017." [*Id.* at 5]. Plaintiff asserts that Defendants' statements concerning Plant Vogtle disclosed to the public for the first time the underlying flaws with Defendants' audits of Southern's finances throughout both the Kemper and Vogtle projects. [*Id.*] Even if

these disclosures concerning Plant Vogtle are relevant to Plaintiff's claims, the sheer existence of this new information does not eliminate repeated, public allegations that Defendant concealed Southern's true finances each year from 2015 to 2017. *See In re Magnum Hunter Res. Corp. Sec. Litig.*, 616 F. App'x 442, 447 (2d Cir. 2015) (holding that later, relevant disclosures do not outweigh "earlier disclosures [that] were sufficient to allow plaintiffs to discover the facts of the underlying cause of action."). As such, Plaintiff cannot rely on this information from 2020 for statute of limitations purposes.

ii. *Statute of Repose*

Defendant also asserts that Plaintiff's claim is barred by the statute of repose. [Doc. 34-1 at 19]. A Section 10(b) claim must be filed the earlier of "2 years after the discovery of the facts constituting the violation" or "5 years after such violation." 28 U.S.C. § 1658(b); *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1802 (2018). Because Plaintiff filed this case on February 17, 2022, Defendant argues that Plaintiff's claim must be dismissed if Plaintiff relied on any alleged misrepresentations that could form the basis of Section 10(b) claim made any earlier than February 17, 2018. [Doc. 34-1 at 20]. Because Plaintiff purchased his Southern securities in 2015, Defendant argues that any allegedly misleading statements Plaintiff relied upon are necessarily barred by the statute of repose. [*Id.* at 20–21]. In response, Plaintiff asserts that the "statute[] of repose begin[s] to run on the date

of the last culpable act or omission of the defendant." *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017); [Doc. 36 at 13]. Because of this, Plaintiff asserts that the statute of repose has not run because Defendant made misleading representations concerning Southern's finances as recently as February 20, 2020. [*Id.* at 14].

While Defendant argues this area of the law has been resolved by the United States Supreme Court [Doc. 37 at 9–10], Plaintiff concedes that there is conflicting authority and that this area of the law remains unsettled [Doc. 36 at 14 n.1]. *Compare McCullough v. Advest, Inc.*, 2017 WL 3675787, at *3 (W.D. Pa. Aug. 25, 2017), *aff'd*, 754 F. App'x 109 (3d Cir. 2018) ("Although the law in this area is somewhat unresolved, the majority of courts have held that the statute of repose in § 1658(b)(2) begins to run on the date of the last alleged misrepresentation regarding related subject matter."); *with Kuwait Inv. Off. v. Am. Int'l Grp., Inc.*, 128 F. Supp. 3d 792, 807 (S.D.N.Y. 2015) ("the statute of repose runs from the date of each relevant misstatement or omission[.]"); *Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 560 F. Supp. 2d 1221, 1229 (M.D. Fla. 2008) (holding that a section 10(b) claim cannot be based on reliance on a representation made more than five years before

the plaintiff filed suit). Because the statute of limitations applies here and the law appears unsettled on this issue, the Court declines to reach this issue.[1]

b. Section 17(a) Claim

Plaintiff also brings a claim under Section 17(a), 15 U.S.C. § 77q(a). [Doc. 1 at 95]. However, Defendants' Motion correctly asserts that there is no private right of action under Section 17(a). *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 797 (11th Cir. 2015). Likewise, Plaintiff acknowledges that the Eleventh Circuit does not recognize a private right of action for investors under Section 17(a). [Doc. 1 at 5 n.1]. As such, this claim is **DISMISSED**. *Currie v. Cayman Res. Corp.*, 835 F.2d 780, 784–85 (11th Cir. 1988) ("We therefore hold that section 17(a) does not imply a private cause of action and that the district court correctly dismissed this theory of relief.").

[1] While the Court declines to reach this issue, the Court acknowledges that, if Defendants' interpretation of the law is accurate, Plaintiff's claim is time-barred by the statute of repose. Plaintiff alleges that Defendants misrepresentations concerning Southern's finances induced him to purchase Southern securities in 2015 that he would not have purchased had he known the financial realities of the Kemper Project. Any representations Plaintiff relied on must necessarily predate this 2015 purchase. Thus, reliance on these representations as the basis of Plaintiff's claim would be barred by the five-year statute of repose. *See Jabil Circuit, Inc.*, 560 F. Supp 2d at 1230 ("[A]ny statement issued [more than five years before plaintiff filed suit] cannot form the basis of plaintiffs' section 10(b) claim."); *In re Teva Sec. Litig.*, 512 F. Supp. 3d 321, 335 (D. Conn. 2021) (holding that recent Supreme Court precedent has not changed that the statute of repose in Section 10(b) cases begins on "each culpable act or omission" rather than "the last culpable act or omission") (citing *ANZ Sec., Inc.*, 137 S. Ct. at 2049).

c. Class Action Certification Denial

Dismissal of Plaintiff's individual claims does not end the Court's analysis. Here, Plaintiff seeks to certify a class of similarly situated individuals who were also allegedly mislead to purchase Southern's securities by Defendants' actions. [Doc. 1 at 5]. Plaintiff cannot adequately represent a class of investors, however, because Plaintiff's own claims are time-barred. *See Bailey v. Cumberland Cas. & Sur. Co.*, No. 7:04-CV-2162-TMP, 2005 WL 8157899, (N.D. Ala. June 3, 2005), *aff'd*, 180 F. App'x 862 (11th Cir. 2006) ("[T]he named plaintiff in this case cannot adequately represent a class of investors due to the staleness of her own claims, and whether a class should be formed should be left to a case in which a more adequate class representative is present."); Fed. R. Civ. P. 23(a)(4) (requiring that "the representative parties will fairly and adequately protect the interests of the class").

Plaintiff asserts that dismissal of his claims should not prevent this Court from certifying a class. [Doc. 36 at 15 n.2]. To support this argument, however, Plaintiff cites a case stating that if a lead plaintiff does not have standing to sue, additional named plaintiffs may need to be added to maintain the class action. *In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 648 (N.D. Ala. 2009). Thus, Plaintiff concedes that additional named plaintiffs would be necessary to maintain the putative class in the case before the Court. Likewise, the Eleventh Circuit has recognized it does not harm members of a putative class action for the district court to refuse the putative

class the opportunity to identify another lead Plaintiff because the individual members claims are tolled during this case. *Bailey v. Cumberland Cas. & Sur. Co.*, 180 F. App'x 862, 865 (11th Cir. 2006). Any allegedly harmed members of the class who meet the requirements of the statutes of limitations and repose remain free to file a claim under Section 10(b).

## III. Conclusion

Accordingly, because the statute of limitations has run, Defendants' Motion [Doc. 34] is **GRANTED**.

**IT IS SO ORDERED**, this 13th day of February, 2023.

William M. Ray II
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE